IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 8:05CR49 |
| Plaintiff, | ) |
| | ) |
| vs. | ) REPORT AND |
| | ) |
| ARTURO CURT JOHNSON and | ) RECOMMENDATION |
| WENDY SUE BUCKHALTER, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the motion of defendant Arturo Curt Johnson (Johnson) to dismiss the Indictment (Filing No. 38) and the motion of defendant Wendy Sue Buckhalter (Buckhalter) to join in Johnson's motion to dismiss (Filing No. 43). Johnson and Buckhalter are charged in an Indictment along with co-defendant Mark Erwin Campbell (Campbell) with a conspiracy to distribute and possess with intent to distribute in excess of 5 kilograms of cocaine (Count I) in violation of 21 U.S.C. § 846. Campbell is also charged in Count II with the possession with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Johnson and Buckhalter are also charged in a criminal forfeiture count (Count III) relating to $1,400 seized on February 6, 2005, in violation of 21 U.S.C. § 853. Johnson and Buckhalter seek the dismissal of the Indictment based on post-indictment statements made by Campbell.

An evidentiary hearing was held on June 3, 2005. The court received into evidence a grand jury transcript (Exhibit 1), a letter from Campbell (Exhibit 101), a copy of a driver's license (Exhibit 102), and copies of letters to Mark Weber (Exhibits 103 and 104). The court also heard the testimony of Kristin Blair and Roseanne Marie Williams. A transcript of the hearing was filed on June 10, 2005 (TR. - Filing No. 49).

### FINDINGS OF FACT

On February 5, 2005, Seward County Deputy Sheriff Maddox made a traffic stop of a vehicle driven eastbound on Interstate 80 in Seward County, Nebraska, by defendant Mark

Campbell (GJTR: 2-3[1]). Following a consent to search by Campbell, Deputy Maddox, with the assistance of a canine, discovered two packages of cocaine hidden in the vehicle (GJTR: 1). Campbell was arrested and interviewed by law enforcement officers (GJTR: 5). Campbell told the officers that he (Campbell) was making the trip with the cocaine from Phoenix, Arizona, for Johnson from Grand Rapids, Michigan, and that Campbell had made approximately nine such trips for Johnson (GJTR: 5). Campbell agreed to cooperate with law enforcement officers by making a telephone call to Johnson in Michigan and informing Johnson that Campbell's car had broken down in Omaha. Campbell informed Johnson the car had a problem with the transmission, had to be towed to a mechanic, and money was needed to fix the car (GJTR: 6). Campbell was told by Johnson to stay put, get a motel, and Johnson would figure out what to do (GJTR: 6). Special Agent Orduna of the Drug Enforcement Administration (DEA) posed as the tow truck driver when Johnson returned a telephone call to a number provided by Campbell to Johnson in the first telephone call (GJTR: 7). On February 6, 2005, Agent Orduna, posing as the mechanic, received a call from Johnson who stated he was in Iowa City, Iowa, on his way to Omaha, and asking if the car was going to be fixed (GJTR: 7). Agent Orduna told Johnson the problem was with a computer chip and that it would cost about $150 to fix. Agent Orduna asked Johnson it he wanted it fixed. Johnson told Agent Orduna " yes, that's my car, I'm coming to pick it up" (GJTR: 7).

    Later on February 6, 2005, Johnson arrived in Omaha as a passenger in a car driven by co-defendant Wendy Buckhalter (GJTR: 9). After calling the number controlled by Agent Orduna, Johnson and Buckhalter were directed to an unmarked parking lot controlled by the DEA (GJTR: 8). After talking with Agent Orduna posing as the mechanic, Johnson was informed that a couple of odd packages were found in Campbell's car and Agent Orduna asked to be cut in on the action (GJTR: 10). Johnson informed Agent Orduna that the packages belong to Campbell because Campbell had a drug problem but would check with the female passenger, Buckhalter, to see if there would be a problem (GJTR: 10). At that point, Johnson and Buckhalter were arrested (GJTR: 10). Campbell had informed law

---

[1] (GJTR: #) refers to the pages in Exhibit 1 received into evidence at the hearing.

enforcement officers of his relationship with Johnson and Buckhalter regarding drug trafficking (GJTR: 11-12).

A complaint charging Johnson and Buckhalter with a conspiracy to distribute cocaine was filed on February 8, 2005 (Filing No. 1). The grand jury returned an Indictment in this matter on February 24, 2005 (Filing No. 16). The indictment charged Johnson, Buckhalter, and Campbell. After his arraignment on March 7, 2005, Campbell was released to reside in Arizona together with various conditions of release (Filing No. 19).

On April 12, 2005, a person described as Mark Campbell walked into Michael Bianchi's law office in Omaha and stated to Mr. Bianchi's receptionist, Kristin Blair, that he wanted to give Mr. Bianchi a letter (TR. 9). Mr. Bianchi is the privately retained counsel for Johnson. Ms. Blair recalled a Mr. Campbell calling Mr. Bianchi's law officer several times before and wanting to speak with Mr. Bianchi but only had left messages (TR. 9-10). On April 12, 2005, Mr. Campbell appeared at Mr. Bianchi's office with Quintina Johnson (TR. 10). Mr. Bianchi was in his office on the telephone and had a client waiting to see him (TR. 11). Mr. Campbell then signed a letter in front of Ms. Blair and left the letter with her ( R. 11). A copy of the letter was received as Exhibit 101 (TR. 12). Roseanne Williams testified that she was Mr. Bianchi's legal secretary on April 12, 2005, and recalled Mr. Campbell coming to Mr. Bianchi's law office (TR. 15). When provided the letter by Ms. Blair which Mr. Campbell signed, Ms. Williams contacted Mr. Campbell and asked to see some identification from him (TR. 16). Mr. Campbell produced a driver's license (TR. 16). Although not copied by Ms. Williams, Exhibit 102, a copy of Campbell's driver's license produced earlier in discovery, was shown to Ms. Williams and she identified the person in the photograph as the Mr. Campbell who had come to Mr. Bianchi's office of April 12, 2005 (TR. 18; Exhibit 102). Ms. Williams also identified copies of letters Mr. Bianchi sent to Mr. Mark Weber, counsel for Campbell, following Campbell's attempts to talk with Mr. Bianchi (TR. 20-21; Exhibits 103 and 104).

Exhibit 101, the letter directed to Michael Bianchi from Mark Campbell is set forth as follows:

>    To Michael Bianchi        4-12-05
>    I Mark Erwin Campbell 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 When I was arrested in Seward county befor (sic) I was questioned I asked for an Attorney and a phone call to call my fiance Quintina Johnson, but they completly (sic) refused me. I gave false statements that involved Arturo Curt Johnson in the unlawful transportation and sales of Illegal Drugs I never ment (sic) for him to be arrested for something Illegal, Iv (sic) never known him to do anything Illegal. But they, the agents who questioned me insisted that I call Arturo Curt Johnson, and only him  They called him and had me tell him that the car was broken down, witch (sic) was not true, and to come and get me. They the agents, told me that they just wanted him to come after the car I was returning they just wanted him to come across the state line, after the car, and then I could make my phone calls, witch (sic) I never got anyway.
>                           Sincerely
>    PO Box 57307                           Mark E. Campbell
>    Phoenix AZ 85079                       /s/ Mark E. Campbell

(Exhibit 101).

## LEGAL ANALYSIS

Johnson and Buckhalter assert the Indictment against them should be dismissed since the indictment against them was based upon the information provided by Campbell and Campbell's information is now shown to be false in light of Campbell's letter. Johnson's counsel does not accuse the government's counsel or the police of wrongdoing, but assert the testimony presented to the grand jury in order to secure the indictment was based on the wrongdoing of Campbell and his initial false statements to the police which Campbell has now recanted.

Johnson and Buckhalter rely upon **United States v. Moore**, 184 F.3d 790 (8th Cir. 1999), wherein the Eighth Circuit stated that "in order to have a charge dismissed for an alleged misstatement or even a perjurious statement, [a defendant] must show that the misstatements were material." **Moore**, 184 F.3d at 794. However, Johnson and Buckhalter's reliance upon **Moore** is misplaced. **Moore** involved grand jury testimony which, at the time of the testimony, was mistaken or falsely made by the law enforcement officer witness. While the testimony given by the law enforcement officer to the grand jury returning the Indictment

against Johnson and Buckhalter regarding the statements made by Campbell was indeed material, i.e., that Johnson and Buckhalter were engaged in drug trafficking with Campbell, the statements by the law enforcement officer were not mistaken or perjurious at the time the testimony was given.  While there is some evidence, i.e., an unsworn statement by Campbell (Exhibit 101) recanting his previous statements to law enforcement officers, the grand jury also had corroborative evidence relating to Johnson's contact with Agent Orduna in reclaiming the car in which the cocaine was found and making statements to Agent Orduna about getting "in on" the action regarding the two packages found in the car.

A challenge to the sufficiency of an indictment is a matter of law and is confined to the four corners of the document.  **Hamling v. United States**, 418 U.S. 87, 117 (1974).  There is no assertion that there was misconduct before the grand jury, returning the Indictment in this matter, which would warrant the dismissal of the Indictment.  Johnson and Buckhalter merely assert the material testimony given to the grand jury has changed due to the recantation of Campbell.

Fed. R. Crim. P. 12(b) provides any defense or objection which is capable of determination without the trial of the issue may be raised by motion.  But the validity or credibility of any "recantation" is a matter for a jury to determine and is not to be determined as a pretrial matter.  The "recantation" may prove to be a problem for the government at time of trial, but the "recantation" is not a basis for the pretrial dismissal of the Indictment under the facts and circumstances of this case.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Johnson's motion to dismiss (Filing No. 38), as joined in by defendant Buckhalter (Filing No. 43), be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any such

objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 10th day of August, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge
